# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| OBRIANT JR. WEBB, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil No. |
| ) | 09-40048-FDS |
| UNITED STATES OF AMERICA, ) | |
| BUREAU OF PRISONS, SANDRA HOWARD, ) | |
| CAROLYN A. SABOL, D. SCOTT DODRILL, ) | |
| HARRELL WATTS, and HENRY J. ) | |
| SADOWSKI, ) | |
| ) | |
| Defendants. ) | |

## AMENDED MEMORANDUM AND ORDER ON DEFENDANTS' MOTION
## TO DISMISS AND PLAINTIFF'S MOTION TO AMEND THE COMPLAINT

**SAYLOR, J.**

This action arises out of the injuries plaintiff Obriant Jr. Webb alleges that he sustained while a prisoner at the Federal Medical Center at Devens, Massachusetts. Webb contends that he was injured when he was pulled out of a broken elevator by prison staff, causing severe pain in his arm, shoulder, and back. Webb also contends that the staff at FMC Devens demonstrated deliberate indifference to his serious medical needs and that, as a result, he has suffered significant and ongoing injury.

Webb has brought a *pro se* complaint against various prison officials, the Bureau of Prisons, and the United States of America pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), for violations of the Eighth Amendment. He seeks injunctive relief and $60 million in damages. This matter is presently before the Court on

defendants' motion to dismiss and plaintiff's motion to amend the complaint.

For the reasons stated below, the motion to dismiss will be granted in part and denied in part, and the motion to amend the complaint will be denied.

## I. Background

The complaint contains the following factual allegations.

### A. The Injury

On November 18, 2007, plaintiff Obriant Jr. Webb and two other inmates became trapped between stories in an elevator at the Federal Medical Center at Devens, Massachusetts. After waiting for almost an hour, the inmates were rescued by prison officials, who pried open the elevator door and helped the inmates up through the narrow opening created by the top of the compartment and floor of the next story up. Webb was the last to be rescued, and the staff pulled him by the arms to get him out. While being pulled, Webb felt his right arm "pop" and tingling in his fingers. He immediately reported the injury.

Since the incident, Webb has experienced severe arm, shoulder, and back pain. Even on pain medication, he cannot comfortably stand or sit for more than five minutes and cannot walk without pain. He contends that the pain is unbearable without medication.

### B. Treatment History

Webb was examined on the day of the incident by a nurse and by the medical duty officer, who diagnosed him with torn muscles in his right side and shoulder.[1] He was prescribed

---

[1] The following information is drawn largely from exhibits attached to the complaint. The Court treats them as if they have been incorporated by reference. Fed. R. Civ. P. 10(c); *Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*, 524 F.3d 315, 321 (1st Cir. 2008) ("Exhibits attached to the complaint are properly considered part of the pleading "for all purposes," including Rule 12(b)(6).")

medication for pain, anxiety, and high blood pressure. Webb was monitored in the clinic and released later that same day with lowered blood pressure and reported lower pain.

The next day, November 19, Webb was seen by psychology services staff to discuss his status following the elevator incident. He declined those services and was instructed on how to contact that office if he needed psychology services going forward.

Two days later, on November 20, Webb filed a formal request for physical therapy. He reported headaches and new and additional pain in his shoulder and back. On December 11, the health services administrator at FMC Devens discussed this request with Webb and noted that he would "be scheduled for further evaluation and necessary treatment accordingly." (See Compl. Ex. 1). During this visit the administrator also promised Webb a "nerve test," which he never received.

On January 17, 2008, Webb was scheduled for an appointment with the physical therapy department, but the appointment was rescheduled. Two months after his initial injury, on January 22, Webb was evaluated by someone from the physical therapy department and prescribed muscle exercises. Webb was also assigned regular visits to the physical therapy department for an initial four-week period.

Webb reported increased pain on February 22 but left without being seen. (*See id.* Ex. 3). On March 21, he was seen for a blood pressure check and pain medication refill, and he again reported severe back pain. He was thereafter referred to physical therapy. He never received that additional physical therapy.

C. **Procedural History**

On January 8, 2008, Webb filed a request for an administrative remedy, asking for physical

therapy treatment.[2] On January 31, defendant Carol A. Sabol, the warden at FMC Devens, responded that the request had already been granted because Webb had seen a physical therapist and had "received and continue[d] to receive appropriate care, in accordance with Bureau of Prisons standards." (*Id.* Ex. 2). Webb appealed the warden's decision. On April 17, defendant D. Scott Dodrill, the Northeast Regional Director of the Bureau of Prisons ("BOP"), denied the appeal. Webb appealed this decision, which was denied on July 9 by defendant Harrell Watts, Administrator for National Inmate Appeals.

Webb also pursued administrative tort remedies. On February 25, he filed an administrative tort claim seeking compensatory damages in the amount of $2 million for his injuries. In a memorandum dated August 8, defendant Henry Sadowski, Regional Counsel for the Northeast Regional Office of the BOP, declined to offer a settlement and told Webb that he could file an action against the United States in federal district court within six months.

Plaintiff filed this action *pro se* on February 20, 2009, alleging violations of the Eighth Amendment against various defendants. On April 16, the Court granted plaintiff's motion to proceed *in forma pauperis*. Defendants have moved to dismiss the complaint for failure to state a claim upon which relief can be granted, and plaintiff has filed a motion, styled as a motion to amend the complaint, to add various factual materials in rebuttal.

## II. Standard of Review

On a motion to dismiss under Rule 12(b)(6), the Court "must assume the truth of all well-plead[ed] facts and give the plaintiff the benefit of all reasonable inferences therefrom." *Ruiz*

---

[2] Webb also requested appropriate training for prison staff on proper response to emergency situations. This issue is not relevant to the present action.

4

*v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). To survive a motion to dismiss, the plaintiff must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 556). Dismissal is appropriate if plaintiff's well-pleaded facts do not "possess enough heft to show that plaintiff is entitled to relief." *Ruiz Rivera v. Pfizer Pharms., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (quotations and original alterations omitted).

Plaintiff is proceeding *pro se* and *in forma pauperis*. By statute, a district court is required to dismiss a complaint filed by a prisoner *in forma pauperis* "at any time" if the court determines that it lacks an arguable basis in law or fact, seeks relief against a defendant who is immune from liability, or fails to state a claim. 28 U.S.C. § 1915(e)(2)(b). In all prisoner actions directed against a governmental entity or officer, a court must screen at the earliest practicable time to determine if the action lacks an arguable basis either in law or in fact, seeks relief from a defendant who is immune from liability, or fails to state a claim upon which relief may be granted. 28 U.S.C. § 1915A. At the same time, "a *pro se* complaint, 'however inartfully pleaded,' must be held to 'less stringent standards than formal pleadings drafted by lawyers' and can only be dismissed for failure to state a claim if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Estelle v. Gamble*, 429 U.S.

5

97, 106 (1976) (quoting *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972)).

**III.   Analysis**

    **A.   Preliminary Matters**

Before proceeding to the merits, the Court must clarify two matters: first, whether it can properly consider the affidavits submitted by defendants along with their motion to dismiss; and second, whether the complaint states a cause of action under the Federal Tort Claims Act.

        **1.   Considering Defendants' Additional Evidence**

Although not raised by the parties, the first issue before the Court is whether it can consider the additional evidence submitted by defendants. Defendants include three affidavits in support of their motion to dismiss. (*See* Def. Mot. to Dismiss Exs. 1-3). Under Fed. R. Civ. P. 12(b)(6), the district court may properly consider only facts and documents that are part of or incorporated into the complaint. *Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*, 524 F.3d 315, 321 (1st Cir. 2008). If "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). However, the Court has discretion to ignore supplementary materials submitted with the motion papers and determine the motion according to the Rule 12(b)(6) standard. *Trans-Spec*, 524 F.3d at 321; *Garita Hotel Ltd. P'ship v. Ponce Fed. Bank, F.S.B.*, 958 F.2d 15, 18-19 (1st Cir. 1992).

The Court concludes that it is premature to address the pending motion as one for summary judgment. "Parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *Rubert-Torres v. Hosp. San Pablo, Inc.*, 205 F.3d 472, 475 (1st Cir. 2000). Here, neither party has had an opportunity for discovery, *see*

*Rubert-Torres*, 205 F.3d at 475, and the types of filings that normally accompany a motion for summary judgment have not been submitted. *See Dantone v. Bhaddi*, 570 F. Supp. 2d 167, 168 (D. Mass. 2008) (absence of statement of undisputed facts weighed against conversion). Plaintiff, as a *pro se* prisoner, would be particularly prejudiced by the conversion of the motion without at least some notice and opportunity to marshal additional evidence in support of his claims. The Court therefore declines to consider defendants' additional evidentiary submissions and will not convert this motion into one for summary judgment.

### 2.  **Stating a Cause of Action under the Federal Tort Claims Act**

The next issue is whether the complaint states a cause of action under the Federal Tort Claims Act ("FTCA"). There are some indications in the filings that plaintiff intended to bring FTCA claims against defendants. In his request for relief, for example, he alleges that each individual defendant exhibited "negligent [] disreg[a]rd of plaintiff['s] care and medical needs." (Compl. App. at 6-7). In his opposition to the motion to dismiss, plaintiff attempts to rebut defendants' sovereign immunity defense by pointing to the federal government's waiver of immunity under the FTCA. (*See* Def. Opp'n at 3). Finally, he previously filed a tort claim under the FTCA with the Bureau of Prisons and attached the denial of that claim to the complaint. (*See* Compl. App. at 13). Under the "indulgent[]" standard applied to *pro se* complainants, this is enough to merit an examination of the factual allegations in the complaint to determine whether it states a cause of action under the FTCA. *See Simmons v. Dickhaut*, 804 F.2d 182, 184 (examining factual allegations in complaint to determine whether *pro se* litigant stated cause of action for deprivation of right of access to the courts).

Such an examination reveals that the complaint does not state a cause of action under the

7

FTCA. The thrust of the complaint is that each of the named defendants knew that plaintiff needed a "nerve test" and physical therapy, yet demonstrated "deliberate indifference" to those needs. (*See, e.g.*, Compl. App. at 4). The complaint also characterizes defendants' actions as "cruel and unusual punishment," implying something more than mere negligence. The fact that the complaint in substance alleges deliberate, rather than negligent, conduct indicates that plaintiff intended to sue for deliberate constitutional violations and not under the FTCA. (*See, e.g.*, Pl. Opp'n at 3) ("The employee[s] in this *Bivens* claim have violate[d] plaintiff['s] eighth amendment [rights] by knowing plaintiff is injured and not diagnosing the problem . . .").

The Court therefore finds that the complaint does not state a cause of action under the FTCA.

### B. The Motion to Dismiss

Pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), plaintiff alleges violations of the Eighth Amendment for denial of appropriate medical treatment following his injury in prison. He seeks damages of $60 million and an injunction "to keep plaintiff from being harassed and retaliated against." (Compl. App. at 6-7). He names six defendants: (1) Sandra Howard, M.D., Clinical Director, FMC Devens; (2) Carolyn Sabol, Warden (retired), FMC Devens; (3) D. Scott Dodrill, Regional Director (former), Northeast Regional Office, BOP; (4) Harrell Watts, National Inmate Appeals Administrator, Central Office, BOP; (5) Henry Sadowski, Regional Counsel, Northeast Regional Office, BOP; (6) the Bureau of Prisons; and (7) the United States of America. Each individual defendant is named in his or her individual and official capacities.

For reasons stated below, the motion to dismiss will be granted as to Dodrill, Watts,

Sadowski, the BOP, and the United States, and as to Howard and Sabol in their official capacities. The motion to dismiss will be granted as to Howard and Sabol in their personal capacities as to any claims that diagnosis or treatment decisions were improper, but denied as to any claims that plaintiff was denied prescribed medical care.

1. **Sovereign Immunity**

Defendants first contend that the *Bivens* claims against the United States, the BOP, and the individual defendants in their official capacities are precluded by the doctrine of sovereign immunity. The Court agrees.

The doctrine of sovereign immunity bars suits against the federal government, its agencies, and federal agents acting in their official capacities. *McCloskey v. Mueller*, 446 F.3d 262, 272 (1st Cir. 2006); *Tapia-Tapia v. Potter*, 322 F.3d 742, 745-46 (1st Cir. 2003). Absent explicit statutory authorization, *Bivens* provides the sole path for plaintiffs who seek damages from federal officials for alleged constitutional violations. *Id.* at 746. *Bivens* only authorizes suits against federal officers in their individual capacities. *Bivens*, 403 U.S. at 389; *Tapia-Tapia*, 322 F.3d at 746 (holding that no *Bivens* remedy is available against the United States, federal agencies, or federal officers in their official capacities). Thus, only claims against the individual defendants in their individual capacities can survive.

Plaintiff points to the Federal Tort Claims Act to rebut the assertion of a sovereign immunity defense. As discussed above, however, plaintiff does not allege any violation of the FTCA in his complaint, and the FTCA has no bearing on plaintiff's constitutional claims in any case. Plaintiff also cites *Ex Parte Young*, 209 U.S. 123 (1908); however, that case applies to actions for injunctive relief against state officials and is not applicable to these proceedings. *See*

9

*id.* at 148.

Accordingly, the motion to dismiss as to the BOP, the United States, and Dodrill, Watts, Sadowski, Howard, and Sabol in their official capacities will be granted.

### 2. **Violations of the Eighth Amendment**

The Eighth Amendment prohibits the infliction of "cruel and unusual punishment." Although the original concern of the drafters appears to have been "torture" and other "barbarous" methods of punishment, the scope of the Amendment has broadened over time to include punishments that "involve the unnecessary and wanton infliction of pain." *See Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976) (internal citations and quotations omitted). The Supreme Court has explicitly held that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain." *Id.* at 104 (internal quotations omitted).

The complaint reveals two types of alleged deprivations under this rubric of indifference to medical needs. First, plaintiff contends that his treatment was substandard. (*See, e.g.*, Pl. Opp'n at 3, 4) ("Plaintiff was put on strong pain medicine, and was to[o] sleepy and medicated to function normal[l]y.") ([D]efendants admitted that plaintiff [has] injuries but just give plaintiff pain medication and don't try to diagnose what is really wrong with plaintiff."). Second, plaintiff contends that he was promised a "nerve test" and additional physical therapy but never received them. (Compl. App. at 3-4).

In *Estelle*, the Supreme Court identified two types of medical care deprivations: indifference by doctors in their response to a prisoner's needs, and indifference by prison staff in intentionally delaying, denying, or interfering with medical treatment. 429 U.S. at 204-05. In

10

keeping with the broader Eighth Amendment jurisprudence, the hallmark of these deprivations is intentional conduct. "An accident, although it may produce added anguish, is not on that basis alone to be characterized as wanton infliction of unnecessary pain." *Id.* at 105.

By this standard, plaintiff's claims of substandard medical treatment under the Eighth Amendment must be dismissed. "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Id.* at 106. Plaintiff contends that medical staff deliberately chose a more expedient but less effective form of treatment over other, more effective forms of treatment. In particular, he contends that they prescribed pain medication and physical therapy when he needed testing and attention from more experienced specialists. (*See* Pl. Opp'n at 4) ("Plaintiff is still in pain and suffering because defendants don't want to give plaintiff any x-rays or tests."). "But the question whether an X-ray—or additional diagnostic techniques or forms of treatment—is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice." *Estelle*, 429 U.S. at 107.

In *Estelle*, the Supreme Court dismissed a suit by a *pro se* prisoner against the prison's doctor and medical director for failure to state a claim. 429 U.S. at 107-08. The facts alleged in the complaint indicated that the prisoner had been seen regularly by doctors over a three-month period; he had been evaluated on the day of the injury; and he had been prescribed pain relievers and muscle relaxants for his back injury. *See id.* at 99, 107. The prisoner contended, however, that more should have been done to diagnose and treat his injuries. *Id.* at 107. The Court held that this was insufficient to violate the Eighth Amendment, even under the liberal standard applied

to *pro se* litigants. *Id.* at 107-08.

The facts alleged in the present matter are analogous. It is uncontested that plaintiff was seen by nurses and prison doctors on the day of his injury, and that he had regular contact with prison medical staff in the months that followed. He immediately received pain, anxiety, and blood pressure medication, was kept for monitoring, and was assigned four weeks of physical therapy in January and February 2008. In light of *Estelle*, plaintiff's lack of improvement under this regimen is not enough to turn good-faith medical decisions into actionable violations of the Eighth Amendment. 429 U.S. at 107; *see Farmer v. Brennan*, 511 U.S. 825, 837 (1994) ("The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'"). For that reason, plaintiff's claims under the Eighth Amendment related to the medical staff's treatment decisions will be dismissed.[3]

The claim of deprivation of prescribed care, however, stands on different footing. "The requisite state of mind [for deliberate indifference] may be manifested by the officials' . . . denial, delay, or interference with prescribed health care." *DesRosiers v. Moran*, 949 F.2d 15, 19 (1st Cir. 1991); *see Estelle*, 429 U.S. at 204-05. Whether plaintiff was actually denied care, and whether such denial, delay, or interference actually manifested deliberate indifference, depends on the surrounding circumstances. Because this is a legitimate question of fact, the Court cannot say that "plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Estelle*, 429 U.S. at 107 (quoting *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972)).

---

[3] This principle also applies to plaintiff's claims that treatment personnel were not specialists or full physical therapists. *See United States v. DeCologero*, 821 F.2d 39, 42 (1st Cir. 1987) ("[Alt]hough it is plain that an inmate deserves adequate medical care, he cannot insist that his institutional host provide him with the most sophisticated care that money can buy.")

Accordingly, the motion to dismiss will be denied as to plaintiff's claims of denial of prescribed medical care.[4]

### 3. Liability of the Administrative Defendants

The only apparent connection between the alleged deprivations and defendants Dodrill, Watts, and Sadowski is that they each denied plaintiff's administrative claims. Dodrill and Watts denied plaintiff's appeals of his initial request to the warden for physical therapy, while Sadowski declined to offer plaintiff a settlement under the Federal Tort Claims Act. Under *Bivens*, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009); Coy *Phelps v. Local 0222*, 2010 WL 3342031, at *6 (D. Mass. Aug. 20, 2010). Moreover, a prison official who was not aware of the risk of constitutional harms to plaintiff cannot be held liable for those harms. *Farmer*, 511 U.S. at 847.

Here, there is simply no basis for finding that these defendants had any actionable relationship to the alleged violations. They did not work at the prison, nor were they involved in plaintiff's medical care. At worst, they failed to perceive the constitutional deprivations of which plaintiff complains. This is not enough. Accordingly, the claims against defendants Dodrill,

---

[4] Qualified immunity is also no defense at this stage, as the allegations, if true, would constitute a constitutional violation that was clearly established well before the relevant time period. *See Coy Phelps v. Local 0222*, 2010 WL 3342031, at *6 (D. Mass. 2010 Aug. 20, 2010) (describing qualified immunity standard).

The Court underscores, however, that these claims require further factual support that the prescribed treatment was denied and that there was no legitimate reason for such denial. Denial, delay, or interference due to inadvertent failures or legitimate treatment decisions would not constitute deliberate indifference. *Estelle*, 429 U.S. at 107; *DesRosiers*, 949 F.2d at 19.

13

Watts, and Sadowski will be dismissed.[5]

### 4. Injunctive Relief

Finally, defendants contend that plaintiff's request for injunctive relief is barred under *Bivens*. This is incorrect. "If the court finds the Eighth Amendment's . . . requirements satisfied, it may grant appropriate injunctive relief" in the context of a *Bivens* action. *Farmer*, 511 U.S. at 831, 846 (injunctive relief was available to prisoner in a *Bivens* suit against prison officials).

Accordingly, plaintiff's claims for injunctive relief will not be dismissed.[6]

### C. The Motion to Amend the Complaint

Plaintiff has filed a "Motion to Amend to Civil Complaint" for the purpose of "add[ing] these rebuttal[s] to further object to [defendants'] declarations." (Pl. Mot. to Amend Compl. at 1). This motion is largely directed to disputing factual allegations made by defendants' affiants. It is thus in the nature of a statement of material facts in opposition to a motion for summary judgment, rather than a motion to amend. The Court will therefore deny the motion without prejudice to plaintiff's ability to raise factual disputes at a later stage in the proceedings.

## IV. Conclusion

For the foregoing reasons, defendants' motion to dismiss is GRANTED as to claims

---

[5] The claims against warden Sabol also stand on a dubious footing. At least for the present, however, the Court will not dismiss the claim in light of her proximity to (and potential control over) plaintiff's treatment at the prison.

[6] Defendants also raise two procedural objections to plaintiff's *pro se* complaint: first, that it was not timely served under Fed. R. Civ. P. 4(m); and second, that it failed to satisfy the pleading requirements of Fed. R. Civ. P. 8. Dismissal for untimely service is discretionary. *See Riverdale Mills Corp. v. U.S. Dep't of Transp. Fed. Aviation Admin.*, 225 F. R. D. 393, 395 (D. Mass. 2005) ("[A] court may [], in its discretion, extend the time for service of process."). And plaintiff's *pro se* complaint, however "inartfully pleaded," does not place this Court "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Estelle*, 429 U.S. at 106. Dismissal on either ground is therefore inappropriate.

against Dodrill, Watts, Sadowski, the Bureau of Prisons, and the United States. The motion to dismiss as to Howard and Sabol is GRANTED for claims against them in their official capacities, GRANTED for claims against them in their personal capacities insofar as they relate to treatment decisions, and otherwise DENIED. Plaintiff's motion to amend the complaint is DENIED.
**So Ordered.**

/s/ F. Dennis Saylor  
F. Dennis Saylor IV  
United States District Judge

Dated: March 21, 2011